5 So.2d 653

## JORDAN v. STATE.

### 8 Div. 175.

Court of Appeals of Alabama.

Dec. 16, 1941.

Rehearing Denied Jan. 13, 1942.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

Watts & White, of Huntsville, for appellant.

BRICKEN, Presiding Judge.

The evidence adduced upon the trial of this case, in the court below, disclosed without dispute, that the crime complained of in the indictment had been committed. In other words, the corpus delicti was fully

proven and disclosed the substantial fact that the crime had been perpetrated.

The material question therefore, in the court below, and here, upon this appeal, was, and is, did the defendant named in the indictment commit the crime. The State insisted he did. The defendant (appellant) strenuously denied the charge and insists the trial court erred in not directing the jury to bring in a verdict for the defendant. This, the controlling question, upon this appeal, is properly presented in different ways.

The crime charged was a serious one; a capital offense. The indictment contained four counts and charged the violation of Section 3886, of the Code 1923, as amended by Act of the Legislature 1935, p. 802, Code 1940, Tit. 14, § 123, which reads as follows:

"Section 1. That Section 3886 of the Code be amended so as to read: 3886.— Exploding Or Setting Off Dynamite. Penalty For.—Any person who wilfully sets off or explodes any dynamite or other explosive in, under or dangerously near to any steam boat or vessel or railroad car in which there is at the time any human being, or any prison or jail or any other house or building which is occupied by a person lodged therein or any inhabited dwelling house or any house adjoining such house whether there is at the time in such house adjoining a dwelling house a human being or not must on conviction be punished at the discretion of the jury by death or by imprisonment in the penitentiary for not less than ten years.

"Section 2. That Section 3887 of the Code be amended so as to read: 3887. Indictment—Sufficiency of.—It shall be sufficient to aver in any indictment for the violation of the provisions of the preceding section as amended in substance as follows: 'A. B. Wilfully set off or exploded dynamite or other explosive in, under or dangerously near to the dwelling house of C. D., in which there was at the time a human being.'" Code 1940, Tit. 15, § 259, form 102.

■ Appellant first complains there was error of the court in overruling demurrers to the indictment. We are not in accord with this insistence . The four counts of the indictment are in statutory form, and hence, are sufficient. See Section 2 of said act, supra.

The evidence in this case, which we have carefully noted and attentively considered, was, as is usual in cases of this character, arson, etc., largely circumstantial as to defendant having committed the offense. One State witness, however, did testify:

"My name is Lucille Love. I am the daughter of Exie Jordan. I recall the explosion on January 3, 1941, under my mother's store. I was there at the time it occurred, about 2:30 to 3:00 o'clock. We had been awake a long time before the explosion. I saw a fire from the north window from the room where we were sleeping. I did not see the flame I just seen the light. I looked out of the window and seen what I thought was the defendant. In my best judgment it was the defendant. He was standing one or two feet from the porch of the store. The fire light was coming from the porch. I don't know whether I saw the fire light and the defendant at the same place or not. The light was west of the front porch. The explosion made a loud noise."

The testimony without dispute disclosed that at the time of the explosion of the dynamite it was raining, and the explosion occurred between 2:30 and 3 o'clock at night. Further, that the defendant was the estranged husband of Exie Jordan, the alleged injured party, and that he had not lived with her for several months. They were married on the 18th day of November 1939, and defendant testified he left her on November 18, 1940, and went back to live at his home in the City of Huntsville, some 3 or 3½ miles from the building in question; which was used by the alleged injured party as a dwelling and store.

Other pertinent facts upon the trial of this case are correctly narrated in the brief of the Attorney General, and are as follows:

"The testimony given on behalf of the State tended to prove that in the early morning hours of January 3, 1941, witness Exie Jordan (the estranged wife of defendant) was asleep in the back room of a building owned by her, when she was awakened by someone walking on the front porch. That the building consisted of two rooms and a front porch. That the two rooms were separated by a partition with a door in it which connected the two rooms. The front room adjoining the porch faced the road and was used to conduct a general merchandise business, while

the back room was used as a bedroom. The defendant had lived with witness in this building from November 18, 1939 until they separated (about a year later), when defendant moved to his own home some three miles away. That witness's daughter and granddaughter were living with her and were asleep in the back room when she was awakened. When she awoke it was raining pretty hard. She got up and went from the bedroom into the store and, while there, continued to hear someone walking on the front porch. She then proceeded to the bedroom and secured a pistol, which she shot, firing into the ground from the back door, then went back to bed and turned over and looked through a window and saw fire. She then went back into the store and turned the switch to the drop light on the front porch, which light failed to come on. At this time the explosion went off, which made a loud noise, shook and jarred the building. That the drop light on the front porch, which she had attempted to turn on, had been burning at the time she had switched it off when she had closed the store and retired for the night. About one hour after the explosion she went to the police station in Huntsville to report the explosion and returned with two policemen, where she remained for about fifteen minutes, then proceeded with the policemen to defendant's home.

"The two Huntsville policemen testified that they went out to the store of Exie Jordan about 3:30 or 4 o'clock on the morning of January 3, 1941, and found there had been an explosion of dynamite at the corner of the building. It had blown away part of the porch and damaged a corner of the building. There had been a fire, or an attempt to set a fire. That paper, which smelled of coal oil, was in a sack and a box on the porch. That they then proceeded to defendant's house and found him there, in his night clothes. That it was still raining at that time. That defendant's bed was turned down, but did not look like anyone had slept on it. That, in defendant's room, they found (1) a pair of shoes that were wet and had mud on them; (2) a coat that was pretty wet; (3) a hat that was good and wet; (4) some gloves that were wet; (5) a flash light that was wet; (6) an electric light bulb with a cord on it in the pocket of the wet coat.

"T. L. Blakemore, a city officer of the City of Huntsville, testified that the two city policemen turned over to him in person (1) the light cord and socket; (2) the pasteboard box with paper in it; (3) paper sack; (4) dress coat, and that he locked them up. That, later that morning, he went to the store of Exie Jordan and found that a fire had been partly started at the corner of the porch and an explosion had occurred and there were several jars smelling of coal oil sitting around. That he took down and brought in a piece of light cord that was hanging from the ceiling of the porch. That the light cord had been cut off and there was no socket in it.

"Dr. Rehling, Senior Toxicologist and Director of Laboratories of the State Toxicological office at Auburn, an expert witness, testified that the ends of the cord with the socket on it, found in the coat of defendant, and the light cord taken from the building of Exie Jordan, were the same."

From the foregoing, and from other facts adduced upon the trial, we are clear to the conclusion a jury question was presented, hence there was no error in the action of the court in refusing to defendant the general affirmative charge.

We shall not undertake to discuss in detail the innumerable exceptions reserved to the court's rulings pending the trial of this case. It would serve no good purpose so to do. Suffice it to say, we have carefully considered every ruling of the court, to which exception was reserved, and in our opinion no semblance of injurious error appears in any of said rulings. It is clearly manifest that the trial court was fair and impartial in every way, and accorded to defendant a fair and impartial trial, to which he was entitled, and, as stated, no error appears calculated to injuriously and erroneously affect the substantial rights of the accused.

On the question of the court's action in overruling and denying defendant's motion for a new trial, we note from the record, in each instance, that the defendant accepted the rulings of the court. Of course we regard this as a clerical misprision in using the word accepted, instead of excepted, and if merit appeared in any of the grounds of said motion, this appellant would be accorded the benefit therefrom, and not denied his legal rights in any manner as a result of this technical and patent unintentional misprision.

The record proper is regular in all respects. The judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.